Filed 10/1/15

**CERTIFIED FOR PARTIAL PUBLICATION**\*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B258736 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA098528) |
| v. | |
| EDUARDO LALO PEREZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Robert M. Martinez, Judge.  Affirmed in part, reversed in part, and remanded with instructions.

Richard A. Levy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Corey J. Robins, Deputy Attorney General, for Plaintiff and Respondent.

\* \* \* \* \* \*

---

\*      Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of the Discussion, parts I, II, III, and IV.B.

Eduardo Lalo Perez (defendant), while 16 years old, kidnapped a woman at knifepoint and then subjected her to a series of sexual acts, digitally penetrating her, placing his penis against her mouth and teeth, and attempting to rape her from behind. A jury found him guilty of six crimes related to the incident, and the trial court sentenced him to prison for 52 years to life. In the published portion of our decision, we conclude that the trial court erred in imposing a sentence of 25 years to life on the forcible oral copulation count, under the "One Strike" law (Pen. Code, § 667.61),[1] because the People did not as to that count plead any circumstance triggering application of section 667.61, and never moved to amend the information to allege any such circumstance. Because our Supreme Court's decision in *People v. Mancebo* (2002) 27 Cal.4th 735 (*Mancebo*), requires such specificity in pleading under the One Strike law, we are compelled to vacate that sentence. In the unpublished portion of our decision, we reject defendant's other challenges to his convictions and sentence. We accordingly affirm his convictions and remand for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

Raquel Doe (Raquel) was walking home from a friend's house one night when defendant, while wearing a mask and gloves, grabbed her from behind, placed a knife to her neck, and threatened to kill her if she screamed. Defendant took her cell phone and camera, and with one hand pressing a knife against her throat and the other fondling her breasts, directed her toward an abandoned house. He pulled her into a darkened alley. He removed his mask enough to expose his lips, pinned Raquel against a wall and forcibly kissed her. While still holding a knife against her body, he then removed the glove from his other hand, unzipped her pants, and penetrated her vagina with his fingers. She felt his bare hand against her thigh. Defendant pulled her further into the alley, where he forced her to bend down and placed his penis against her mouth and teeth; he

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

was unable to insert his penis into her mouth. Defendant turned Raquel away from him, directed her to bend over, and tried to insert his penis into her vagina; she felt his penis against her thighs, but he did not penetrate her. All the while he ignored Raquel's sobbing. He marched her back to the edge of the alleyway, and left. Although no evidence of defendant's age was introduced at trial, it is undisputed that he was 16 years old at the time of the crime.

Raquel immediately contacted the police. She identified her attacker as a Hispanic male approximately 5 feet 6 inches to 5 feet 7 inches in height and weighing approximately 160 pounds, but could give no further details because he was partially or wholly masked during the entire attack. Forensic technicians collected samples from Raquel's right and left inner thighs, her breasts, her vulva, her vagina, her external anus, her external mouth and her left shoe (because she said she had spit on her shoe after the assault). The sample from her right inner thigh contained epithelial (or skin-cell) DNA; the profile from that sample was uploaded onto the national database. Approximately one year later, defendant's DNA was collected and uploaded onto the database and was a match to the DNA collected from Raquel's inner thigh.

The People charged defendant with six counts: (1) kidnapping (§ 207, subd. (a)); (2) sexual penetration by a foreign object (§ 289, subd. (a)(1)); (3) attempted forcible rape (§ 261, subd. (a)(2)); (4) second-degree robbery (§§ 211, 212.5); (5) assault with intent to commit a felony (§220, subd. (a)(1)); and (6) forcible oral copulation (§ 288a, subd. (c)(2)). As to all counts, the People alleged that defendant had personally used a dangerous or deadly weapon under section 12022, subdivision (b)(1). As to the kidnapping and sexual penetration by a foreign object counts, the People alleged that defendant was eligible for a sentence of 25 years to life under the One Strike statute because he kidnapped the victim and personally used a dangerous or deadly weapon. The People made no such allegations with respect to the forcible oral copulation count. The trial court nevertheless instructed the jury to determine, as to the sexual penetration count and the forcible oral copulation count, whether defendant had kidnapped the victim, had

3

personally used a dangerous or deadly weapon, or had engaged in aggravated kidnapping of the victim. The jury returned guilty verdicts on all counts, and found that defendant had kidnapped the victim, had used a dangerous or deadly weapon, and had engaged in an aggravated kidnapping.

The trial court imposed a state prison sentence of 52 years to life. The court imposed a sentence of 26 years to life on the sexual penetration by a foreign object count comprised of a base sentence of 25 years to life under the One Strike law and a one-year weapon enhancement under section 12022, subdivision (b)(1). The court then imposed a consecutive sentence of 25 years to life on the forcible oral copulation count under the One Strike law, and a consecutive one-year sentence on the attempted forcible rape count. The court imposed a concurrent, three-year sentence on the second degree robbery count. Invoking section 654, the court stayed the sentences on the remaining two counts and stayed the deadly weapon enhancement on all of the counts except the sexual penetration by a foreign object count.

Defendant timely appeals.

## DISCUSSION

### I. Sufficiency of the Evidence

Defendant argues that all of his convictions must be vacated because they rest on insufficient evidence. In particular, he argues that (1) the only evidence tying him to these crimes is the DNA found on the victim's thigh, and such biological evidence is insufficient to sustain a conviction *as a matter of law*, (2) he introduced expert testimony that his skin cells could have ended up on the victim's inner thigh when he touched the glove worn by the actual perpetrator, and the evidence at trial did not "vitiate" his "theory of secondary transfer," and (3) the totality of the evidence at trial does not support the jury's verdict. In evaluating the sufficiency of the evidence, we ask whether there is reasonable and credible evidence of solid value to support the jury's verdicts beyond a reasonable doubt; we do so by looking at the entire record, viewing all of the evidence in the light most favorable to the verdicts and drawing all reasonable inferences to support

4

those verdicts. (*People v. Banks* (2014) 59 Cal.4th 1113, 1156, disapproved on other grounds in *People v. Scott* (2015) 61 Cal.4th 363, 391; *People v. Medina* (2009) 46 Cal.4th 913, 919.)

Defendant first argues that a conviction that rests solely upon fingerprint or DNA evidence is infirm as a matter of law. This is an overstatement. To be sure, courts have overturned California convictions for insufficient evidence when the sole evidence tying the defendant to the crime is biological evidence (fingerprints or DNA) found on items to which the defendant had access prior to the crime. (See, e.g., *People v. Trevino* (1985) 39 Cal.3d 667, 696-697, disapproved on other grounds in *People v. Johnson* (1989) 47 Cal.3d 1194 [fingerprint on dresser drawer insufficient, where defendant stayed in home with the dresser prior to the charged murder]; see also *Mikes v. Borg* (9th Cir. 1991) 947 F.2d 353, 356-358 [fingerprint on turnstile posts insufficient, where posts were used in public locations prior to victim's purchase of them].) But, "under California law," fingerprints and DNA are viewed as "strong evidence of identity and ordinarily are sufficient, without more, to identify the perpetrator of a crime"—particularly where the item or place touched was not something to which the defendant had access prior to the crime. (*People v. Tuggle* (2012) 203 Cal.App.4th 1071, 1076; see also *People v. Figueroa* (1992) 2 Cal.App.4th 1584, 1588 [palm prints on window that was point of entry for burglary sufficient, where no evidence defendant had been near window before]; *People v. Preciado* (1991) 233 Cal.App.3d 1244, 1247 [fingerprints on wristwatch box sufficient, where no evidence defendant had access to the box].) In this case, defendant's skin cells were found on Raquel's inner thigh, an area to which he had no access until the charged sex crimes, and is thus not an instance in which the biological evidence is to be considered insufficient as a matter of law.

In his second argument, defendant argues that DNA is different from fingerprints, that he presented expert testimony that skin cells with his DNA could have come to be on Raquel's inner thigh through "secondary transfer" (because the perpetrator who touched her thigh wore gloves that could have touched defendant's skin prior to the attack), and

5

that his convictions are invalid unless the People disprove his theory of secondary transfer. We reject this argument legally and factually. Although non-California decisions seem to support defendant's proffered legal rule that the People must disprove every "reasonable hypothesis" (see *Finley v. State* (Fla.App. 2014) 139 So.3d 940, 943; *Eby v. State* (Tex.App. 2005) 165 S.W.3d 723, 732-733), the law in California is different: Although some California authority notes that a case based on circumstantial evidence is deemed "legally insufficient unless it is so complete as to exclude every reasonable hypothesis of innocence" (*People v. Ollado* (1966) 246 Cal.App.2d 608, 611), our Supreme Court has clarified that this does not erect a categorical rule. Instead, "'[w]hether the evidence presented is direct or circumstantial, . . . the relevant inquiry on appeal remains whether *any* reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.'" (*People v. Ruiz* (1988) 44 Cal.3d 589, 611.) It does not matter which standard we apply in this case, however, because the evidence at trial disproved that defendant's secondary transfer hypothesis was "reasonable" *and* because the evidence was sufficient for a reasonable trier of fact to find him guilty beyond a reasonable doubt. Although both the People's expert and defendant's expert agreed that secondary transfer of DNA can occur, secondary transfer was not a reasonable hypothesis in this case and did not preclude a reasonable jury from finding defendant guilty beyond a reasonable doubt for two reasons: (1) it was uncontroverted that the concentration of skin cells found on Raquel's inner thigh was too high to have been left by secondary transfer; and (2) it was uncontroverted that the assailant touched Raquel's inner thigh with his bare hand and his bare penis, *not* with a gloved hand (as defendant's secondary transfer theory necessarily posits).

Defendant lastly asserts that the evidence, when viewed as a whole, was insufficient to sustain his convictions. More specifically, he argues that (1) Raquel was unable to pick defendant out of a photo spread, (2) her description of the assailant (as 5 feet 6 inches tall and 160 pounds) did not match defendant's height and weight when he was arrested a year later (5 feet 6 inches and 120 pounds), and was even less accurate

because defendant was 16 at the time and could have grown taller in the intervening year, (3) her description of the assailant as Hispanic is of little significance because statistical data not introduced at trial would have shown that the area where the charged crimes occurred has a high concentration of Hispanic residents, (4) the police were unable to show that defendant used the cell phone taken from Raquel during the incident, (5) Raquel's assailant told her he was "wanted" by police, but no evidence was presented that there was a warrant out for defendant at the time, and (6) the police did not conduct a "voice lineup" to see whether Raquel recognized defendant's voice a year later.

We are unpersuaded. Raquel's inability to identify defendant based on his mug shot is of little consequence because her assailant was fully or partially masked during the entire incident. Along similar lines, her misjudgment of the assailant's weight is not surprising given that it was night and that her attention was on the sexual assault, not on her assailant's build as he assaulted her. Although evidence that defendant used Raquel's cell phone, that defendant had an active warrant for his arrest, or that Raquel recognized his voice would have reinforced his identity as the assailant, its absence does not negate or undermine the other evidence of his identity. And defendant's attempt to impeach the verdict with evidence he did not present below (the statistical evidence) is inappropriate.[2] (See *People v. Kelly* (2006) 40 Cal.4th 106, 126.) The jury had before it evidence that Raquel's assailant touched her inner thigh with his bare hand and penis, and had touched his penis to her mouth; evidence that defendant's skin cells were found in a high concentration on her inner thigh and that male DNA (which was not subjected to further testing) was found outside her mouth and in her spit immediately after the incident; and evidence that Raquel's description of the assailant's height, weight and race generally matched defendant. On the basis of this evidence, a reasonable jury could find beyond a

---

[2]     Accordingly, we deny defendant's request that we take judicial notice of the U.S. Census Bureau's data on the ethnic composition of the area in which the crimes occurred. For the same reason we deny defendant's request that we judicially notice a growth chart and life expectancy table never offered at trial.

7

reasonable doubt that defendant was the perpetrator. Defendant's request that we reweigh evidence to come to a different conclusion is one we must decline. (*People v. Brown* (2014) 59 Cal.4th 86, 106.)

## II. Evidentiary Rulings

Defendant next raises three challenges to the exclusion or admission of evidence. We review evidentiary rulings for an abuse of discretion. (*People v. Harris* (2005) 37 Cal.4th 310, 337.)

### A. *Exclusion of testimony regarding defendant's age*

During his cross-examination of Los Angeles County Sheriff's Department Sergeant Glen Eads (Sergeant Eads), defense counsel asked Sergeant Eads if he knew defendant's age at the time he first contacted defendant about the DNA match. After the People objected, Sergeant Eads responded that he did not "know his exact age." Defense counsel then asked if Sergeant Eads's recollection would be refreshed if he looked at his report; he said yes. Out of the jury's presence, the People renewed its relevance objection, and defense counsel explained that defendant's young age (16) was relevant to show that he might have grown in the year prior to his arrest and that Raquel's physical description did not match defendant's actual height at the time of the incident. When the trial court asked defense counsel how Sergeant Eads would know defendant's age, counsel responded that "he got it from the defendant's I.D., along those lines, because he has booking information." The court then precluded further questioning of Sergeant Eads on this subject, commenting that "there's other ways to establish his age at the time."

Defendant argues that this ruling was error because defendant's age was relevant to support his defense that defendant might have been shorter at the time of the crimes than at the time of his arrest, which would have made Raquel's physical description less accurate. But the trial court did not exclude the evidence as irrelevant. Instead, the court's questions suggested its concern that Sergeant Eads's testimony would have been based on reading a report that contained defendant's age; such testimony would have been based on hearsay (that is, the out-of-court statements comprising the booking report)

8

rather than on personal knowledge. Personal knowledge is prerequisite for lay testimony. (Evid. Code, § 702.) Although Sergeant Eads's statement that looking at the report might refresh his recollection could be construed as an indication that he *did* have personal knowledge, Sergeant Eads also stated he "didn't know" defendant's age; faced with this potentially conflicting evidence, the court did not abuse its discretion in relying on Sergeant Eads's more direct disclaimer of personal knowledge.

There was no prejudice in any event. The trial court did not preclude defendant from introducing his age through other means, and defendant elected not to do so. Moreover, defendant elected not to produce any evidence that he had grown in height or that, statistically, young men of that age grow in height; without this additional evidence, the absence of evidence of his age was irrelevant. Further, defendant argued the other inconsistencies in Raquel's description of her assailant and her inability to select defendant's photograph from the photo spread; in light of the jury's rejection of this line of argument, it is not reasonably probable that evidence that Raquel's estimation of defendant's height was off by an inch or two would have yielded a different verdict. (*People v. Watson* (1956) 46 Cal.2d 818, 836-837.)

We further reject defendant's argument that this evidentiary error violated his federal constitutional rights to present his own defense, to cross-examine witnesses, or denied him a fair trial by excluding relevant evidence or by dictating how he should conduct his defense. It is well settled that application—or even misapplication—of the "ordinary rules of evidence" do not typically implicate the federal Constitution. (*People v. Marks* (2003) 31 Cal.4th 197, 227.) The trial court did not exclude defendant's proffered defense; it simply excluded one avenue for admitting one piece of evidence relevant to challenge Raquel's identification, and left other avenues open. This did not co-opt the defense or otherwise deny defendant his constitutional rights. (*People v. McNeal* (2009) 46 Cal.4th 1183, 1203; *People v. Guillen* (2014) 227 Cal.App.4th 934, 1019-1020; *People v. Miralrio* (2008) 167 Cal.App.4th 448, 462 (*Miralrio*).)

9

### B. Exclusion of specific instances of secondary transfer of DNA

During defense questioning of the People's DNA expert and his own DNA expert, defendant was permitted to ask whether the experts were aware of cases that had been dismissed based on secondary transfer of DNA and to pose hypothetical questions regarding secondary transfers through gloves that closely matched the facts of this case. But the trial court did not allow defense counsel to ask questions about the specific details of secondary transfer occurring in other cases. Defendant argues that this was error because such inquiry would have (1) impeached the People's DNA expert's testimony that he had not encountered secondary transfer in sexual assault cases, and (2) provided the jury with more vivid examples.

The trial court did not abuse its discretion in excluding this evidence. Although the court did not articulate the legal basis for its ruling, we review the ruling and not the reasoning (*People v. Chism* (2014) 58 Cal.4th 1266, 1295, fn. 12), and the court's ruling is valid under Evidence Code section 352. That section grants a court broad discretion to exclude evidence where its probative value is substantially outweighed by "the substantial danger of unfair prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352; *People v. Holford* (2012) 203 Cal.App.4th 155, 167-168.) In this case, the court was within its discretion to exclude evidence of the details of other cases in which secondary transfer occurred because the benefits of such testimony would have been outweighed by (1) the undue consumption of time necessary to introduce those details and to hash out whether they were similar to or dissimilar from the details of *this* case, and (2) the danger that the jury might be misled if the details, similarities and differences were not sufficiently fleshed out.

### C. Admission of Sergeant Eads's answer to question that suggested additional information not before the jury

During the cross-examination of Sergeant Eads, defense counsel asked: "In this particular case, you got information regarding DNA and that was regarding [defendant]

10

in that he became kind of the focus of your investigation; is that accurate?" Sergeant Eads responded, "In addition to other things, too." Defendant argues that this response is akin to a prosecution witness's intentional reference to a defendant's excluded confession or defendant's status as a suspect in other investigations involving identical crimes. (See *People v. Navarette* (2010) 181 Cal.App.4th 828, 836 [witness testified that he opted to forego DNA testing in light of defendant's "statement" that had been excluded by the court] (*Navarette*); *People v. Bentley* (1955) 131 Cal.App.2d 687, 690, disapproved on other grounds in *People v. White* (1958) 50 Cal.2d 428, 431 [witness testified that defendant was a suspect in a crime similar to the charged offense] (*Bentley*).)

To begin, defendant forfeited this argument because he did not object to Sergeant Eads's answer or move to strike it. (*People v. Dykes* (2009) 46 Cal.4th 731, 756-757.) Defendant argues that his lack of objection should be excused because (1) objection is not necessary when a prosecutor engages in misconduct, and Sergeant Eads is considered part of the "prosecution team" under *Brady v. Maryland* (1963) 373 U.S. 83, and (2) defense counsel was constitutionally ineffective.

Neither argument is persuasive. Although the failure to object to prosecutorial misconduct may be excused if an objection would have been futile or an admonition from the trial court would not have cured the harm caused by the misconduct (*People v. Centeno* (2014) 60 Cal.4th 659, 674), defendant has not demonstrated the futility of an objection or of an admonition; more to the point, this was not *prosecutorial* misconduct because "a prosecutor cannot be faulted for a witness's nonresponsive answer that the prosecutor neither solicited nor could have anticipated." (*People v. Tully* (2012) 54 Cal.4th 952, 1035.) *Brady* is irrelevant, as it deals with a prosecutor's discovery obligations for which the prosecutor is ultimately responsible. (See *In re Brown* (1998) 17 Cal.4th 873, 879, fn. 3.) Defense counsel was also not constitutionally ineffective. The decision not to object did not fall below an objective standard of competence (*People v. Montoya* (2007) 149 Cal.App.4th 1139, 1146-1147 [requiring showing of incompetence and prejudice]) because (1) as we discuss below, the answer was not

inappropriate, or (2) objecting would have called even more attention to the issue, which would have been a bad tactical decision (*People v. Castanada* (2011) 51 Cal.4th 1292, 1334 ["The decision whether to object to the admission of evidence is 'inherently tactical,' and a failure to object will rarely reflect deficient performance by counsel"].)

On the merits, Sergeant Eads's answer was not objectionable under *Navarette* or *Bentley*. Sergeant Eads did not allude to an excluded confession by defendant or to defendant's involvement in a similar crime; he stated that his investigation started to focus on defendant based on the DNA match and "other things." This comment is nothing like the bombshell revelations going directly to guilt that were the basis for *Navarette* and *Bentley*. Moreover, there *were* other reasons for Sergeant Eads's suspicions to focus on defendant, and those "other things" were in evidence—namely, that defendant lived in the area where the incident occurred and that Raquel's description of her assailant somewhat matched defendant.

## III.     Instructional Issue

Defendant argues that the trial court erred in not instructing the jury on the crime of attempted forcible oral copulation as a lesser-included offense to the forcible oral copulation crime charged in the information. A trial court is required to instruct a jury, even when not requested to do so, on any lesser-included offense if there is "substantial evidence" "that the lesser offense, but not the greater, was committed." (*People v. Cruz* (2008) 44 Cal.4th 636, 664.) We review this instructional issue de novo. (*People v. Cole* (2004) 33 Cal.4th 1158, 1218.)

There was no error here. As an attempt crime, attempted forcible oral copulation is presumably a lesser-included offense to the completed crime of forcible oral copulation. (§§ 288a, 664; *People v. Braslaw* (2015) 233 Cal.App.4th 1239, 1248 [attempts are generally lesser-included offenses to completed crimes].) However, there was not "substantial evidence" that defendant committed only the lesser-included crime of attempted forcible oral copulation. The *completed* crime of forcible oral copulation only requires proof of "copulation" (§ 288a, subds. (a) & (c)(2)(A))—that is, "[a]ny

12

contact, however slight, between the mouth of one person and the sexual organ . . . of another" (*People v. Dement* (2011) 53 Cal.4th 1, 41-42 (*Dement*); accord, *People v. Huynh* (2012) 212 Cal.App.4th 285, 305). Neither penetration nor ejaculation is required. (*Dement*, at pp. 41-42; cf. *People v. Clements* (1931) 111 Cal.App. 173, 175 [penetration required for crime of rape].) In this case, Raquel testified that defendant forced his penis against her lips and mouth, and her account was corroborated by the fact that male DNA was found on the outside of her mouth as well as in her spit.

Defendant argues that evidence suggested that his penis might not have penetrated Raquel's mouth and that his penis touched her face *and mouth*. This evidence does not suggest that defendant is guilty only of attempted forcible oral copulation because the evidence he points to still shows contact between defendant's penis and Raquel's mouth, which—as noted above—constitutes sufficient evidence of "oral copulation" to sustain a conviction for the completed crime.

## IV. Sentencing

### A. *Proper application of One Strike law*

Since its adoption in 1994, California's One Strike law (§ 667.61) has set forth an "alternative and harsher sentencing scheme for certain sex crimes." (*People v. Anderson* (2009) 47 Cal.4th 92, 102, 107 (*Anderson*).) For the sex crimes falling within its reach (§ 667.61, subd. (c) [enumerating crimes]), a first-time offense can result in one of two heightened sentences. The sentence will be 15 years to life if the jury finds (or the defendant admits) one or more of the "circumstances" listed in section 667.61, subdivision (e). (§ 667.61, subds. (b) & (e).) The sentence will be 25 years to life if the jury finds (or the defendant admits) either (1) *two* of the "circumstances" listed in section 667.61, subdivision (e), or (2) *one* of the more aggravated "circumstances" listed in section 667.61, subdivision (d). (§ 667.61, subds. (a), (d) & (e).)

The One Strike law specifically spells out what the People must do in order to invoke its greater penalties: "The penalties provided in this section shall only apply if the existence of any circumstances specified in subdivision (d) or (e) is alleged in the

accusatory pleading pursuant to this section, and is either admitted by the defendant in open court or found to be true by the trier of fact." (§ 667.61, subd. (o).) In *Mancebo, supra*, 27 Cal.4th 735, our Supreme Court read this requirement strictly to obligate the People to allege, in the operative charging document, "which qualifying circumstance or circumstances are being invoked for One Strike sentencing." (*Id.* at p. 752; accord, *People v. Wutzke* (2002) 28 Cal.4th 923, 930.) In the Supreme Court's view, this outcome is dictated not only by the language of the One Strike law, but also by due process because "the fair notice afforded by that pleading requirement may be critical to the defendant's ability to contest the factual bases and truth of the qualifying circumstances"; may be essential for the defendant to assess his sentencing "exposure"; and may be necessary for the defendant to know what he must admit to if he elects to enter a plea. (*Mancebo*, at pp. 746-747, 750, 752.)

In this case, defendant argues that the People did not adhere to these specific pleading requirements as to each of his One Strike law convictions.

### 1. Sexual penetration by a foreign object (count 2)

Defendant argues that there is a mismatch between the One Strike law circumstances the People pled with respect to the sexual penetration by a foreign object count, and the circumstances later presented to the jury. We agree, but conclude that this mismatch does not affect his One Strike law sentence. It does, however, affect the deadly weapon enhancement.

In the information, the People alleged two One Strike law circumstances with respect to the sexual penetration with a foreign object count: (1) "[d]efendant kidnapped the victim"; and (2) "[d]efendant personally used [a] dangerous or deadly weapon." The jury was instructed on these circumstances, and found both to be true. Because these two circumstances—which are listed in subdivision (e) of section 667.61—were properly pled and proven, the trial court's sentence of 25 years to life complies with the One Strike law. (§ 667.61, subd. (a).)

14

Defendant points out that the trial court instructed the jury on the additional circumstance that defendant engaged in an "aggravated kidnapping" within the meaning of section 667.61, subdivision (d)(2), and that this circumstance was nowhere alleged in the information. (See § 667.61, subd. (d)(2) [listing as a circumstance that the defendant "kidnapped the victim of the present offense and the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying [enumerated] offense . . ."].) *Mancebo* held that a court could not impose a One Strike law sentence based upon the multiple-victim circumstance that was never alleged under the One Strike law. (*Mancebo*, *supra*, 27 Cal.4th at p. 740.) However, the trial court's error in submitting this circumstance to the jury in this case has no effect on the One Strike law sentence of 25 years to life because, as noted above, it is independently valid due to the two circumstances that *were* properly pled and proven.

Our conclusion does require us to vacate the one-year enhancement for the use of a deadly weapon. The One Strike law provides that where, as here, "only the minimum number of circumstances specified in subdivision (d) or (e) that are required for" an enhanced One Strike law sentence "have been pled and proved, . . . those circumstances shall be used as the basis for imposing" the One Strike law sentence "rather than being used to impose the punishment authorized under any other provision of law, unless [the other] provision . . . provides for a greater penalty . . . ." (§ 667.61, subd. (f); *Mancebo*, *supra*, 27 Cal.4th at pp. 738, 740 [use of gun enhancement not permitted when same allegation was necessary to support the 25-years-to-life One Strike law sentence]; *People v. Rodriguez* (2012) 207 Cal.App.4th 204, 214-215 [use of deadly weapon enhancement not permitted when allegation was necessary to support the 25-years-to-life One Strike law sentence].) Because the deadly weapon circumstance is necessary to support the One Strike law sentence, we vacate the one-year enhancement for use of a deadly weapon imposed with respect to the sexual penetration by a foreign object count.

### 2. Forcible oral copulation (count 6)

Defendant next argues that his One Strike law sentence of 25 years to life for the forcible oral copulation sentence must be vacated because the People did not allege any One Strike circumstances with respect to this count. Defendant is correct: Although the information alleges One Strike law circumstances with respect to the kidnapping and sexual penetration counts, the information alleges no such circumstances as to the forcible oral copulation count. Under *Mancebo*, "the People's failure to include a[ny] . . . allegation[s] [with respect to the forcible oral copulation count] must be deemed a discretionary charging decision." (*Mancebo*, *supra*, 27 Cal.4th at p. 749.)

The People offer three arguments as to why this pleading error should not affect the One Strike law sentence on this count. First, the People contend that defendant had actual notice that the People sought to apply the kidnapping, use of a deadly weapon, and aggravated kidnapping circumstances to the forcible oral copulation count because the trial court told the jury as much during jury selection. This is not entirely correct. The trial court did tell the jury that the kidnapping and use of a deadly weapon circumstances applied to the forcible oral copulation count; it did not, however, mention the aggravated kidnapping circumstance at that time. But under *Mancebo*, what matters is notice by pleading, not actual notice. The defendant in *Mancebo* certainly knew from the counts alleging different victims that a multiple-victim enhancement could be at issue, but the Supreme Court in *Mancebo* found that this knowledge did not satisfy the requirements of section 667.61 or due process. (*Mancebo*, *supra*, 27 Cal.4th at p. 753.)

Second, and relatedly, the People argue that the trial court actually amended the information to allege the kidnapping and use of a deadly weapon circumstances as to the forcible oral copulation count because the trial court told the jury as much during voir dire. However, the trial court did not indicate that it was amending the information; instead the court read the information as if it already had been amended. But it had not. There is nothing in the record to indicate that the prosecutor ever asked the trial court to amend the information, and the People do not argue on appeal that such a request was ever made. Amendment is certainly permitted. (§ 1009; see *Miralrio*, *supra*, 167

16

Cal.App.4th at p. 458 [allowing amendment to allege One Strike law sentence as to additional counts].) However, it is up to the prosecution, as part of its power over charging decisions (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 976), to so request. Its decision not to do so, as noted above, is "deemed to be a discretionary charging decision." (*Mancebo*, *supra*, 27 Cal.4th at p. 749.)

Third, the People assert that the information contains allegations that, while not specific to the forcible oral copulation count, can be construed as such. The People point to two allegations. One states: "It is further alleged as to count(s) 1, 2, 3, 4, 5, and 6, *pursuant to subdivision (b) of Welfare and Institutions Code section 602*, that the defendant was 14 years of age or older at the time the defendant committed the above offense(s), and that a circumstance enumerated in subdivisions (d) and (e) of section 667.61 of the Penal Code is applicable." This is insufficient for two reasons. To begin, as the italicized portion indicates, this allegation is designed to explain why this case is being filed in adult court rather than juvenile court under Welfare and Institutions Code section 602. It is *not* meant to invoke the One Strike law, for its allegations are partly nonsensical for these purposes given that counts 1 (kidnapping) and 4 (second degree robbery) are not even One Strike law-eligible offenses. (See § 667.61, subd. (c).) Further, this allegation does not specify which of the One Strike law circumstances it seeks to invoke. Although *Mancebo* leaves it open to the People to allege circumstances by "reference to the description of the qualifying circumstance . . . in conjunction with a reference to section 667.61," by "specific numerical designation" of which provision within section 667.61, subdivision (d) or (e), or by "some combination thereof," (*Mancebo*, *supra*, 27 Cal.4th at p. 754), the court made clear that the People must provide "notice of *which* qualifying circumstance or circumstances are being invoked" (*id.* at p. 752). It is not enough to refer to all of them.

The second allegation the People highlight states: "It is further alleged, within the meaning of Penal Code sections 667.61(a) and (e), . . . *as to count(s) 1 and 2* that the following circumstances apply: Defendant kidnapped the victim . . . [and] Defendant

17

personally used [a] dangerous or deadly weapon." To be sure, *People v. Riva* (2003) 112 Cal.App.4th 981 (*Riva*), held that a trial court could properly apply a 25-year discharge-of-a-firearm enhancement under section 12022.53, subdivision (d) as to a count for which that enhancement was not alleged, at least when it was alleged (but not imposed) for two other counts in the information. (*Id.* at pp. 1002-1003.) The court reasoned that the Legislature had required that the "existence of any fact . . . be alleged in the accusatory pleading" (§ 12022.53, subd. (j)), but had not required that those facts "be alleged in connection with a particular count in order to apply to that count." (*Riva*, at p. 1001.) The court further found it "highly unlikely" that the absence of an allegation with respect to the specific count at issue would affect defendant's decision to enter a plea because few defendants would "admit in open court to" a 25-year enhancement. (*Id.* at p. 1003.)

We find *Riva* inapplicable to the One Strike law. The language requiring pleading and proof in section 12022.53, subdivision (j) and in section 667.61, subdivision (o) is nearly identical. Thus, it might be said that the Legislature's decision not to require count-specific allegations in section 12022.53 applies with equal force to section 667.61. But section 12022.53 and section 667.61 are different, as *Riva* itself acknowledged. (*Riva*, *supra*, 112 Cal.App.4th at p. 1003 ["we conclude that the Supreme Court's concern over lack of fair notice expressed in *Mancebo* is not applicable in the present case"].) Unlike section 12022.53's firearm enhancements, "[t]he One Strike law is not . . . a sentence enhancement"; "[r]ather, it 'sets forth an *alternate* penalty for the underlying felony itself . . . .'" (*People v. Acosta* (2002) 29 Cal.4th 105, 118, quoting *People v. Jefferson* (1999) 21 Cal.4th 86, 101.) Unlike sentencing enhancements, a defendant can only plead guilty to a One Strike law crime if the circumstances necessary to trigger that crime are pled—that is how the defendant knows the maximum sentence he or she faces and what he or she must admit during the plea. Moreover, extending *Riva's* rule to the One Strike law would give short shrift to *Mancebo's* due process underpinnings by allowing one or more One Strike law circumstance(s) alleged as to one count to trigger a One Strike law sentence on another count as long as the total sentence

18

actually imposed by the trial court does not exceed the total sentence that could have been imposed if the People had adhered to the actual allegations in the charging document. *Mancebo*'s due process concerns are better served by a more straight-forward rule, and the one that we adopt today: The People must allege the specific One Strike law circumstances it wishes to invoke as to each count it seeks to subject to the One Strike law's heightened penalties.

Because the People did not adhere to this rule, the One Strike law sentence as to the forcible oral copulation count must be reversed.

### B. Cruel and unusual sentence

Defendant finally argues that the 52-year sentence the trial court imposed for an offense he committed while only 16 years old violates the cruel and unusual punishment clause because it amounts to a "de facto life without possibility of parole" sentence. (See *Graham v. Florida* (2010) 560 U.S. 48, 74 ["[F]or a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole"]; *People v. Caballero* (2012) 55 Cal.4th 262, 265, 268 [extending *Graham* to cases that are the "equivalent" of life without possibility of parole].)

In light of our ruling above, defendant's sentence on the forcible oral copulation count is no longer an indeterminate sentence of 25 years to life, and is instead a determinate sentence of "three, six or eight years." (§ 288a, subd. (c)(2)(A).) No matter which sentence the trial court imposes at the resentencing, defendant's total sentence will likely be no greater than 35 years to life. Such a sentence "leave[s] the possibility of a substantial life expectancy after prison," and is accordingly not a "de facto life without possibility of parole" sentence that implicates the cruel and unusual punishment clause. (*People v. Perez* (2013) 214 Cal.App.4th 49, 52.) We accordingly find no merit to defendant's constitutional argument.

### DISPOSITION

The judgment is modified by striking the sentence imposed under the One Strike law as to count 6, and striking the one-year weapon enhancement on count 2. The matter

19

is remanded for resentencing on count 6, and the clerk of the superior court is directed to prepare an amended abstract of judgment reflecting the sentence of 25 years to life on count 2.  In all other respects the judgment is affirmed.

**<u>CERTIFIED FOR PARTIAL PUBLICATION.</u>**


_____, J.

HOFFSTADT

We concur:


_____, Acting P. J.

ASHMANN-GERST


_____, J.

CHAVEZ

20